Prince A.Z.K. ADEKOYA II, Plaintiff,

v.

Eric H. HOLDER, et. al., Defendants.

No. 09 Civ. 10325(VM).

United States District Court,
S.D. New York.

Nov. 12, 2010.

Prince A.Z.K. Adekoya II, New York, NY, pro se.

Christopher Kendrick Connolly, United States Attorney's Office, New York, NY, for Defendants.

### *DECISION AND ORDER*

VICTOR MARRERO, District Judge.

Plaintiff Prince A.Z.K. Adekoya II ("Adekoya"), proceeding pro se, brought this action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,[1] 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) against United States Public Health Service ("PHS") employees Peter D'Orazio ("D'Orazio"), Ma-

---

1. Adekoya's original complaint dated December 21, 2009 (the "Complaint") was unclear as to whether he brought his claims pursuant to *Bivens* or the Federal Tort Claims Act

deleine Foreman ("Foreman"), Deanna Smith ("Smith"), Yonette Hercules ("Hercules"), Nongluk Gritsadanuruk ("Gritsadanuruk"), Chae Chong ("Chong"), Vanetta Joi Thompson ("Thompson"), John Wooldrige ("Wooldrige"), and a former PHS employee identified only as "Dr. Uribe A." ("Uribe") (collectively, "the PHS Defendants"), United States Attorney General Eric H. Holder ("Holder"), Secretary of the United States Department of Homeland Security ("DHS") Janet Napolitano ("Napolitano"), Secretary of United States Immigrant and Customs Enforcement ("ICE") John Morton ("Morton"), ICE New York Field Office Director Christopher Shanahan ("Shanahan"), ICE Deportation Officers "R. Lopez" ("Lopez") and Victor Ramos ("Ramos") (collectively, "the Federal Defendants"). Adekoya also names four employees of outside contractors who worked at the Varick Detention Center in New York ("Varick"): Evett Chin ("Chin"), Marilou Atienza ("Atienza"), and Shelly Farman ("Farman")—all employed as nurses—and Edward Railey ("Railey"), the facility director at Varick (collectively, "the Outside Contractor Defendants," and together with the PHS Defendants and the Federal Defendants, the "Defendants"). Adekoya's Amended Complaint alleges violations of his constitutional rights arising from his ICE detention.

The PHS Defendants and Federal Defendants, represented by the United States (the "Government"), now move to dismiss the Amended Complaint pursuant to Rules 12(b)(1) ("Rule 12(b)(1)") and 12(b)(6) ("Rule 12(b)(6)") of the Federal Rules of Civil Procedure.

For the reasons discussed below, the motion to dismiss is GRANTED. The Court also dismisses the Amended Complaint as to the Outside Contractor Defendants sua sponte.

## I. BACKGROUND [2]

Adekoya alleges that since April 23, 2008, he has been in ICE custody at Varick, the Bergen County Jail in New Jersey, and the Perry County Correctional Center in Alabama. Prior to his admission to Varick in April 2008, Adekoya was treated at Beekman Hospital in Manhattan, where a physician removed a cast that had been on Adekoya's right hand as a result of an injury that he suffered prior to entering ICE custody. The physician recommended that Adekoya return to the hospital in May 2008 for surgery. Adekoya claims that he never received this follow-up care and his repeated requests for medical attention in New York, New Jersey, and Alabama were ignored.

Adekoya alleges that this inadequate medical care caused him "to lose the effective use ... of his right hand" and left him "handicapped." (See Am. Compl. at 32.) Adekoya also repeatedly claims that he is "suffering from severe loss of vision, constant eye pain and dizziness." (Id. at 34.) Finally, Adekoya alleges that for several

("FTCA"). In his amended complaint, dated August 16, 2010 ("Amended Complaint" or "Am. Compl."), Adekoya specifies that he brings the action pursuant to Bivens rather than the FTCA. In his "Affirmation in Opposition to Federal Defendants' Motion to Dismiss," dated August 16, 2010, Adekoya stated that this action "should not be read as a complaint to seek remedy or relief pursuant to the [FTCA]." Therefore, the Court will address Adekoya's claims only under Bivens.

2. In deciding a motion to dismiss, the Court may consider any documents that are attached to, referenced in, or integral to the preparation of the pleadings. See Miller v. Lazard, Ltd., 473 F.Supp.2d 571, 578 (S.D.N.Y.2007). The Court accepts all well-pleaded facts in the non-movant's pleading as true for the purpose of ruling on a motion to dismiss. See Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 180 (2d Cir.2008). The facts below are adopted from the Amended Complaint, of which no further citation will be made.

days while he was at the Bergen County Jail he was deprived of religious meals and services, as well as access to a law library. (*See Id.* at 36.)

As best the Court can determine, the Amended Complaint purports to state four causes of action: that inadequate medical care provided by Defendants constituted violations of Adekoya's rights under (1) the Due Process Clause of the Fifth Amendment, (2) the Eighth Amendment's prohibition of "cruel and unusual punishment," (3) the Equal Protection Clause of the Fourteenth Amendment; [3] and (4) that the denial of religious services and food and access to a law library violated the First Amendment.

On November 5, 2010, the Federal Defendants filed a motion to dismiss the Amended Complaint (the "Motion") under Rule 12(b)(1) and 12(b)(6) on the grounds that: (1) the Court lacks subject-matter jurisdiction over Adekoya's *Bivens* claims against all Federal Defendants and PHS Defendants in their official capacities and against the PHS Defendants in their personal capacities, (2) Adekoya failed to allege personal involvement of Federal Defendants and PHS Defendants in any constitutional violations, and (3) Adekoya failed to state a claim for deliberate indifference to serious medical needs.

## II. *DISCUSSION*

### A. *SUBJECT MATTER JURISDICTION*

#### 1. *Standard of Review*

"A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it ex-

ists." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000); *see also Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 507 (2d Cir.1994). "When considering a motion to dismiss for lack of subject matter jurisdiction ... a court must accept as true all material factual allegations in the complaint." *Shipping Fin. Servs. Corporation v. Drakos,* 140 F.3d 129, 131 (2d Cir.1998) (citations omitted). However, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Id.*

#### 2. *Application*

Adekoya sues the Federal Defendants in both their personal and official capacities. Under *Bivens* a plaintiff may bring claims against federal officers only in their personal capacities for a violation of certain constitutional rights. *See Bivens,* 403 U.S. at 397, 91 S.Ct. 1999. *Bivens* suits brought against federal officers in their official capacities are considered to be suits against the United States. *See Robinson,* 21 F.3d at 510. Such suits against the United States are barred by the doctrine of sovereign immunity. *See Fed. Deposit Ins. Corporation v. Meyer,* 510 U.S. 471, 478, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) (holding that "the United States simply has not rendered itself liable ... for constitutional tort claims"). Therefore, the Court finds that it lacks subject matter jurisdiction over Adekoya's constitutional claims against the Federal Defendants in their official capacities.

Adekoya's claims against the PHS Defendants must also be dismissed for

---

**3.** Although Adekoya purports to bring this claim under 42 U.S.C. § 1983 ("§ 1983") and the Equal Protection Clause of the Fourteenth Amendment, the Defendants were federal rather than state officers. Consequently, the Court will construe these claims as arising

under *Bivens* and the Fifth Amendment. *See Cuoco v. Moritsugu,* 222 F.3d 99, 105 (2d Cir.2000) (noting that the district court construed the pro se plaintiff's § 1983 claims as *Bivens* claims "because the defendants were federal rather than state officers").

lack of subject matter jurisdiction. The Public Health Service Act ("PHSA") provides that a claim against the United States under the FTCA is the exclusive remedy for personal injury claims allegedly caused by the acts or omissions of PHS employees acting within the scope of their employment. 42 U.S.C. § 233(a); *see also Hui v. Castaneda,* —— U.S. ——, 130 S.Ct. 1845, 1855, 176 L.Ed.2d 703 (2010) (holding that the PHSA precludes *Bivens* actions against PHS employees for harms allegedly arising out of the performance of medical functions related to their employment).

Here, as the Amended Complaint acknowledges, there is no dispute regarding the employment status of the PHS Defendants. To the extent the Amended Complaint contains any specific allegations against the PHS Defendants, such allegations are directed at the performance of medical functions and within the scope of their employment. Therefore, § 233(a) of the PHSA bars Adekoya from bringing such claims under *Bivens* against the PHS Defendants. *See Hui,* 130 S.Ct. at 1855.

### B. *FAILURE TO STATE A CLAIM*

#### 1. *Standard of Review*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (*quoting Bell Atl. Corporation v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court must accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002).

In the case of a pro se litigant, the Court reads the pleadings leniently and construes them to raise "the strongest arguments that they suggest." *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (citations and internal quotation marks omitted). This guidance applies with particular force when the plaintiff's civil rights are at issue. *See McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004); *see also Flaherty v. Lang,* 199 F.3d 607, 612 (2d Cir.1999). To survive a Rule 12(b)(6) motion to dismiss, however, a pro se plaintiff's factual allegations must be at least "enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955.

To state a claim under *Bivens,* a plaintiff must allege that an individual defendant personally committed a specific wrongful act that violated a well-established constitutional right of which a reasonable person would have known. *See Barbera v. Smith,* 836 F.2d 96, 99 (2d Cir.1987); *see also Harlow v. Fitzgerald,* 457 U.S. 800, 817–18, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (holding that "bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery"). Deliberate indifference to the medical needs of an immigrant detainee in certain circumstances gives rise to a cognizable claim under the Due Process Clause of the Fifth Amendment.[4]

---

**4.** Because Adekoya was in civil immigration detention rather than criminal detention, his deliberate indifference claims should be analyzed under the Fifth Amendment's Due Process clause rather than the Eighth Amendment's "cruel and unusual punishment" clause. *See Cuoco,* 222 F.3d at 106 (pre-trial detainee is not being punished and is thus protected by Fifth Amendment's Due Process Clause rather than the Eighth Amendment). This Fifth Amendment protection extends to

*See Cuoco,* 222 F.3d at 106. Furthermore, "a defendant in a *Bivens* action may not be held liable for damages for constitutional violations merely because he held a high position of authority." *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996); *see also Iqbal,* 129 S.Ct. at 1948 (finding that "[b]ecause vicarious liability is inapplicable to *Bivens* ... suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

■ To hold a high-ranking official liable under *Bivens,* Adekoya must demonstrate that the official was personally involved in a violation of his constitutional rights and not merely that he held a supervisory position. Adekoya can satisfy the personal involvement requirement by showing that each high-ranking defendant either (1) participated directly in the alleged constitutional violation; (2) was informed of the violation and failed to remedy it; (3) created, or permitted continuation of, a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) failed to act on information indicating the unconstitutional acts were occurring. *See Thomas v. Ashcroft,* 470 F.3d 491, 496–97 (2d Cir.2006).

2. *Failure to Allege Federal Defendants' Personal Involvement*

■ Adekoya's claims against Federal Defendants Holder, Napolitano, Morton, and Shanahan fail to allege any personal involvement by them in the alleged constitutional violations. Holder and Napolitano are sued only by virtue of their supervisory positions. The allegations against them fail to state facts sufficient to support a finding that they were personal-ly involved in a violation of Adekoya's constitutional rights. Consequently, the claims against them are dismissed.

The Amended Complaint alleges that Morton, as the Secretary of ICE, is "responsible for conducting at least the custody review of every detainee and making the decision to release a detainee or continue his or her detention and the proper care of the detainee." (Am. Compl. at 9.) Shanahan, as New York Field Director, allegedly had discretion over Adekoya's placement and chose to send him "to a facility where plaintiff wasn't cared for medically, feeding and also deprived access to adequate law library" [sic] while Adekoya was housed at the Bergen County Jail. (*Id.* at 9–10.)

While these claims against Morton and Shanahan could be read to allege the requisite personal involvement, for the reasons set forth below, they are nonetheless insufficient to state a claim. These allegations are similar to those that the Supreme Court found inadequate in *Iqbal.* Iqbal alleged that the FBI director and former United States Attorney General "knew of, condoned, and willfully and maliciously agreed to subject [him to harsh conditions of confinement] as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest." *Iqbal,* 129 S.Ct. at 1951. The Court rejected these claims as "bare assertions" that "amount to nothing more than a formulaic recitation of the elements of a constitutional ... claim." *Id.* (internal quotations omitted). Such "conclusory" allegations are "not assumed to be true." *Id.*

■ As for Uribe, Lopez, Ramos, Chin, Atienza, Farman, and Railey,[5] the Amended Complaint simply alleges that each of them was aware of Adekoya's medical con-

---

deportable aliens in detention. *See Doherty v. Thornburgh,* 943 F.2d 204, 208 (2d Cir.1991) (*citing Wong Wing v. United States,* 163 U.S. 228, 238, 16 S.Ct. 977, 41 L.Ed. 140 (1896)). The tests for deliberate indifference under the

Eighth and Fifth Amendments are the same. *See Cuoco,* 222 F.3d at 106.

5. According to the Government, it is unclear whether the Outside Contractor Defendants

ditions and complaints and/or was involved in his treatment, but failed to provide adequate care. These assertions, which at best may be read to allege conduct comprising common law negligence, fail to state a claim that these defendants were personally involved in a violation of Adekoya's constitutional rights.[6]

### 3. *Deliberate Indifference Claim* [7]

 Even assuming the Amended Complaint properly alleges personal involvement by any of the defendants, the Court cannot find that Adekoya has stated a sufficient *Bivens* claim. In order to establish "a claim arising out of inadequate medical care [under Due Process], a pris-

oner must prove 'deliberate indifference' to [his] serious medical needs." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir.1998) (*quoting Estelle*, 429 U.S. at 104, 97 S.Ct. 285). This standard includes both (1) an objective "medical need" element measuring the severity of the alleged deprivation, and (2) a subjective "deliberate indifference" element measuring whether the prison official acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir.2003).

 The objective prong requires that the complainant's medical condition be "sufficiently serious." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir.1996). The subjective prong requires that the

---

have been properly served with the Amended Complaint as required by Rule 4 of the Federal Rules of Civil Procedure. *See* Memorandum of Law in Support of the Federal Defendants' Motion to Dismiss the Amended Complaint, dated November 5, 2010, at 1 n. 1.

6. Even assuming Adekoya's allegations against the PHS employees were not subject to dismissal for lack of subject-matter jurisdiction, these claims also fail to allege personal involvement. With respect to D'Orazio, the Amended Complaint merely alleges that he was "aware" of Adekoya's medical condition but failed to provide adequate treatment and was "directly responsible for the functioning of the detention medical services." (Am. Compl. at 16–17.) As for the remaining PHS employees, the Amended Complaint simply alleges that each of them was aware of Adekoya's medical conditions and complaints and/or involved in his treatment but failed to provide adequate care. These assertions fail to state a claim that the PHS Defendants were personally involved in a violation of Adekoya's constitutional rights. *See Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (holding that "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under" the Constitution).

7. In addition to the case at bar, Adekoya has filed three other lawsuits concerning his con-

finement. Two cases filed in the Southern District of New York stem from his confinement in the Metropolitan Correctional Center before he was transferred to ICE custody. Both of those suits were dismissed and affirmed by the Second Circuit. *See Adekoya v. Federal Bureau of Prisons*, No. 08 Civ. 5912, 2009 WL 874196 (S.D.N.Y. Mar. 30, 2009), *aff'd*, 375 Fed.Appx. 119 (2d Cir.2010) and 381 Fed.Appx. 35 (2d Cir.2010); *Adekoya v. Federal Bureau of Prisons*, No. 08 Civ. 1484, 2009 WL 1835012 (S.D.N.Y. June 18, 2009), *aff'd*, 382 Fed.Appx. 26 (2d Cir.2010). Adekoya filed a third case in the District of New Jersey ("the New Jersey Lawsuit") that alleges First Amendment claims discussed below and inadequate medical treatment for the hand injuries at issue in the case at bar. The New Jersey Lawsuit, however, alleged inadequate medical care only in the Bergen County Jail and not in Varick and the Perry County Correctional Center. A ruling on defendant's motion for summary judgment is currently pending. *See Adekoya v. Chertoff*, No. 08 Civ. 3994, 2009 WL 2990130, at *5 (D.N.J. Sept. 16, 2009). To the extent that Adekoya's medical care claims in the case at bar cover the same allegations as are pending summary judgment in the New Jersey Lawsuit, the "first filed rule" may give priority to the New Jersey Lawsuit and constitute an additional grounds for dismissal here absent a showing of special circumstances. *See Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir.1991).

charged official must act with a sufficiently culpable state of mind. *See id.* "The required state of mind, equivalent to criminal recklessness, is that the official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998) (*quoting Hathaway,* 99 F.3d at 553). Thus, to state a *Bivens* claim for inadequate medical care, Adekoya must allege that Defendants knew of and disregarded an excessive risk to his health or safety.

Even assuming that Adekoya's hand and eye injuries satisfy the objective prong and could be characterized as a "serious medical condition," the Amended Complaint fails to provide sufficient details to satisfy the subjective prong. The Amended Complaint states in conclusory terms that the PHS Defendants, Outside Contractor Defendants, Lopez, and Ramos were aware of Adekoya's medical needs and failed to provide adequate care. In addition, the pleading does not specify that any particular defendant knew of and disregarded an excessive risk to his health or safety, and were otherwise involved in the constitutional and statutory violations he asserts and what knowing and reckless actions they took to produce the injuries he claims. *See Smith,* 316 F.3d at 184 (stating that because "the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law not every lapse in prison medical care will rise to the level of a constitutional violation") (*citing Estelle v. Gamble,* 429 U.S. 97, 105–06, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). On this basis, the Amended Complaint does not contain sufficient factual allegations to defeat a motion to dismiss. *See Twombly,* 550 U.S. at 555, 127 S.Ct. 1955; *Brock v. Wright,* 315 F.3d 158, 164 (2d Cir.2003).

## C. *FIRST AMENDMENT CLAIM*

Adekoya contends that he was denied access to a law library and his religious meals for "several days" while incarcerated at the Bergen County Jail. (Am. Compl. at 36.) These same allegations covering the same period of detention at the Bergen County Jail are the subject of another lawsuit that Adekoya filed in United States District Court for the District of New Jersey (the "New Jersey Lawsuit"). Under the doctrine of res judicata, subsequent litigation is precluded "if the earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *In re Teltronics Services, Inc.,* 762 F.2d 185, 190 (2d Cir.1985).

The court in the New Jersey Lawsuit dismissed Adekoya's complaint for failure to state a First Amendment claim. *See Adekoya II v. Chertoff,* 08 Civ. 3994, 2009 WL 539884, at *4 (D.N.J. Mar. 4, 2009). On the denial of access to a law library claim, Adekoya failed to show that the denial caused him past or imminent "actual injury," such as hindering "his efforts to pursue a legal claim." *See Lewis v. Casey,* 518 U.S. 343, 352, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). As for the religious meals claim, under Third Circuit precedent, a prisoner does not state a First Amendment violation if he is denied Halal meat but provided with vegetarian meals and his religious activities are not otherwise infringed. *See Williams v. Morton,* 343 F.3d 212, 219 (3d Cir.2003). Adekoya filed an amended complaint and the New Jersey district court again dismissed the First Amendment claims on the same grounds. *See Adekoya v. Chertoff,* 08 Civ. 3994, 2009 WL 2990130, at *5 (D.N.J. Sept. 16, 2009). Consequently, Adekoya's First Amendment claims must

be dismissed as precluded under res judicata.[8]

### III. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the motion to dismiss (Docket No. 28) of defendants United States Attorney General Eric H. Holder Secretary of the United States Department of Homeland Security, Janet Napolitano, Secretary of United States Immigration and Customs Enforcement ("ICE") John Morton, ICE New York Field Office Director Christopher Shanahan, ICE Deportation Officers R. Lopez and Victor Ramos, and United States Public Health Service employees Peter D'Orazio, Madeleine Foreman, Deanna Smith, Yonette Hercules, Nongluk Gritsadanuruk, Chae Chong, Vanetta Joi Thompson, John Wooldrige, and former employee Dr. Uribe A. is GRANTED; and it is further

**ORDERED** that because the deficiencies in the amended complaint, dated August 16, 2009 ("Amended Complaint") apply with equal force to the claims against defendants Evett Chin, Marilou Atienza, Shelly Farman, and Edward Railey, the Court sua sponte DISMISSES the Amended Complaint against these defendants; and it is further,

**ORDERED** that the Amended Complaint of plaintiff Prince A.Z.K. Adekoya is DISMISSED with prejudice.

The Clerk of Court is directed to withdraw any pending motions and to close this case.

**SO ORDERED.**

---

8. In addition to the reasons set forth below, this claim is subject to dismissal because Adekoya has failed to allege that any Defendants were personally involved in the violation of his First Amendment rights. *See Barbera*, 836 F.2d at 99.